IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LUIS JOSE FREITES GONZALEZ, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KRISTI NOEM, Secretary of the U.S. | ) | |
| Department of Homeland Security; PAMELA | ) | |
| BONDI, Attorney General of the United | ) | No. 2:26-cv-02252-SHL-atc |
| States; TODD M. LYONS, Acting Director of | ) | |
| Immigration and Customs Enforcement; | ) | |
| DIRECTOR, West Tennessee Detention | ) | |
| Facility; and FIELD OFFICE DIRECTOR for | ) | |
| Enforcement and Removal Operations, U.S. | ) | |
| Department of Homeland Security, | ) | |
|     Respondents. | ) | |

ORDER GRANTING PETITION

On March 9, 2026, pro se Petitioner Luis Jose Freites Gonzalez filed the Petition for a

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241.  (ECF No. 1.)  He states that he is a citizen

of Venezuela who entered the United States on June 23, 2023.  (Id. at PageID 3.)  On February

10, 2026, Freites Gonzalez was detained by ICE during a scheduled check-in appointment and

has remained in detention "without ever receiving an individualized bond hearing."  (Id.)  The

Petition seeks immediate release from Respondents' custody, or an individualized custody

redetermination before an immigration judge.[1]  (Id. at PageID 5.)  Respondents[2] responded on

---

[1] At the same time, Freites Gonzalez filed a pro se Emergency Motion for Temporary Restraining Order and Preliminary Injunction Ordering Individualized Bond Hearing.  (ECF No. 3.)  Because the relief sought in the motion is duplicative of that sought in the Petition, the motion is **DENIED AS MOOT**.

[2] Respondents also move "for the substitution of Christopher Bullock, Field Office Director of Immigration and Customs Enforcement, New Orleans Field Office, Immigration and

March 13.  (ECF No. 11.)  Freites Gonzalez replied on March 30.  (ECF No. 12.)

For the reasons explained below, Freites Gonzalez is entitled to immediate release, and the Petition is **GRANTED**.

## BACKGROUND

Freites Gonzalez, a citizen of Venezuela, entered the United States on June 23, 2023, near Eagle Pass, Texas.  (ECF No. 1 at PageID 3.)  He is married to a Venezuelan national living in the U.S.  (Id.)  He was previously approved for Temporary Protected Status.  (Id.)  He has no criminal history.  (Id.)

On February 10, 2026, he was detained after appearing for a routine immigration check-in and was taken into ICE custody.  (Id.)  He remains at the West Tennessee Detention Facility in Mason, Tennessee.  (Id.)  The present Petition followed, the crux of which argues that Freites Gonzalez was illegally detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Freites Gonzalez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond.  Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a).  See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or

---

Customs Enforcement, as the sole Respondent in this case, and the dismissal of all remaining Respondents."  (ECF No. 11 at PageID 57 n.1 (citing Rosciszewski v. Adducci, 983 F. Supp. 2d 910, 914 (E.D. Mich. 2013) ("[T]he ICE District Director is the proper respondent in a habeas petition brought by an alien, since the District Director has power over such aliens." (citation omitted)))).)  The motion is **GRANTED**.  The case caption shall be **MODIFIED** to reflect that Christopher Bullock is the sole Respondent.

more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond.  8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

3

Freites Gonzalez alleges violations of § 1226(a) and Fifth Amendment due process. (ECF No. 1 at PageID 5.)  He seeks his immediate release or a bond hearing.  (Id.)  In response, Respondents contend that Freites Gonzalez should be required to exhaust administrative remedies; that § 1225, not § 1226, applies to him because he is an "applicant for admission"; that Freites Gonzalez should be treated for due process purposes as if stopped at the border; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediately released.  (ECF No. 11 at PageID 62–68.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Freites Gonzalez challenges his detention without bond as violative of § 1226(a) and his constitutional rights. (ECF No. 1 at PageID 5.)  The Court first considers whether exhaustion should be excused, then interprets § 1225 and § 1226 to determine which applies to Freites Gonzalez, and then analyzes the due process claim.

## I.    Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied

4

this doctrine to dismiss petitions for lack of jurisdiction. See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018). In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions. E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims. Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)). Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship. Id. If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused. Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Respondents argue that the Court should dismiss the Petition based on prudential exhaustion, as Freites Gonzalez has not appealed to the BIA and received an adverse decision. (ECF No. 11 at PageID 62–64.) They recognize that Congress has not imposed an

5

administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's

decision. (Id. at PageID 62 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). But they

point to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS

19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the Northern District of Ohio,

e.g. Villalta, 2025 U.S. Dist. LEXIS 169688, which required petitioners to appeal to the BIA

before seeking habeas relief under "prudential principles of exhaustion." (ECF No. 11 at PageID

63.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for

immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And

the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases.

See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn.

Dec. 30, 2025). Therefore, exhaustion may only be required here based on "sound judicial

discretion." McCarthy, 503 U.S. at 144. But, exhaustion may be excused if "the legal question

is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529

U.S. at 13.

Freites Gonzalez's failure to exhaust is excused. First, the question he poses in the

Petition is fit for resolution and undue delay would impose hardship on him. The Parties do not

dispute any material facts. (See ECF Nos. 1 at PageID 3; 11 at PageID 59–60.) Thus, deciding

which statute applies to Freites Gonzalez's detention is a purely legal question, "which is right in

a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Further, if Freites Gonzalez is required to pursue an appeal with the BIA, his appeal process

would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-

12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were

designed to prevent prolonged detention during removal proceedings, which are often lengthy.

Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted).  Therefore, denying Freites

Gonzalez the chance to have a bond hearing merely because he did not appeal to the BIA may

force him "to endure six months or more of potentially unlawful detention and thus would cause

him great hardship."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion

here.  The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal

immigrants who "have been residing in the United States for years."  29 I. & N. Dec. at 220–21.

Thus, any appeal would be futile, and exhaustion is excused.

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part

will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S.

303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute

must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that

'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th

Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207,

(1997)).

Custody over noncitizens during removal proceedings is generally governed by two

statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of

inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and

detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>            . . .
>    (2)    Inspection of other aliens
>    (A)    In general

> Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen "present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this section, all applicants for admission "shall be detained."  <u>Id.</u> § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)    Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)    <u>may</u> continue <u>to</u> <u>detain</u> the arrested alien; and
> (2)    <u>may</u> <u>release</u> the alien on—
>     (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>        . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

8

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue. [3]

Freites Gonzalez argues that ICE's new interpretation of § 1225(b)(2)(A) violates 8 U.S.C. § 1226(a) and his rights under the Fifth Amendment. (ECF No. 1 at PageID 5.) He argues that § 1226(a) applies to him because he "is not an 'arriving alien' subject to mandatory detention under Section 1225(b)." (ECF No. 1 at PageID 4.) "While he entered without inspection in 2023," according to Freites Gonzalez, "he has since resided continuously in the United States under ICE supervision, complying with all requirements for nearly two years." (Id.) He further states that his case "is being processed in standard removal proceedings . . . confirming that his detention is governed by Section 1226(a)." (Id.)

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Freites Gonzalez because he is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 11 at PageID 64.) As a result, they assert that "he is subject to mandatory detention and not entitled to a bond hearing." (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Freites Gonzalez is an "applicant for admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about

---

[3] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).

Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal"

proceedings. But Freites Gonzalez was not "arriving" when he was detained far away from the

United States border, after having been in this country for over two years. (ECF No. 1 at PageID

11.) Also, the record does not show that he was eligible for expedited removal proceedings.

Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute.

Section 1225 describes the process of inspecting and removing immigrants actively crossing the

border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision

[described in § 1225] generally begins at the Nation's borders and ports of entry, where the

Government must determine whether an alien seeking to enter the country is admissible."). And

Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute

itself. "If possible, every word and every provision is to be given effect." Antonin Scalia &

Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply

§ 1225(b)(2)(A) to Freites Gonzalez would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Freites Gonzalez

was seeking admission at the time of his detention, nor does it show that he had received a

determination by an immigration officer that he was "not clearly and beyond a doubt entitled to

be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not

in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over

10

two years.  To interpret "applicant for admission" using its ordinary meaning but outside the context of the provision, as argued by Respondents, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondents' reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Freites Gonzalez's reading of the statute is the only one compatible with the presence of § 1226(c).  What is more, Freites Gonzalez has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Freites Gonzalez's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Freites Gonzalez was charged with being removable and detained in West Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on

11

bond." (Id.)  But the Attorney General may <u>not</u> deny him the bond hearing to which he is entitled.  <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Freites Gonzalez's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  <u>See</u> <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *8 (quoting <u>Maldonado v. Olsen</u>, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for over two years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully,

12

temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v.

Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit

applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of

process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th

Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official

action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's

interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Freites Gonzalez argues that Respondents violated the Due Process Clause of the Fifth

Amendment by detaining him without a bond hearing.  (ECF No. 1 at PageID 5.)  Respondents,

however, assert that Freites Gonzalez's due process rights were not violated because, without a

lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'"

(ECF No. 11 at PageID 67 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139

(2020)).)

Here, because § 1226(a) applies to Freites Gonzalez, he is owed the process given to him

under that statute.  As for the Mathews factors, (1) Freites Gonzalez has a strong private liberty

interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and

danger to the community, and, (3) given Freites Gonzalez's clean criminal record, it will be

difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was

apprehended, Freites Gonzalez was present in the United States for over two years and lives here

with his wife.  (ECF No. 1 at PageID 3.)  These facts indicate his ties to the United States, his

desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside.  Thus, Freites Gonzalez is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").  Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.  Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Freites Gonzalez's petition is **GRANTED**.

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondents are ordered to release Freites Gonzalez immediately.  Respondents are **ENJOINED** from pursuing Freites Gonzalez's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondents are further **ORDERED** to file a Status Report with this Court on or before April 6, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 2nd day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

14